Mr. Wright Langley Director Historic Key West Preservation Board Monroe County Courthouse Key West, Florida 33040
Dear Mr. Langley:
This is in response to your request for an opinion on substantially the following question:
 DOES THE HISTORIC KEY WEST PRESERVATION BOARD OF TRUSTEES HAVE STATUTORY AUTHORITY UNDER PART IV, CH. 266, F.S., TO PRODUCE, PUBLISH AND SELL BOOKS ON LOCAL HISTORY?
The Historic Key West Preservation Board of Trustees is a body corporate created within the Department of State for the purpose of acquiring, restoring, preserving, maintaining, reconstructing, reproducing and operating for the use, benefit and general welfare of the people of this state certain ancient or historic landmarks, sites, cemeteries, graves, military works, monuments, locations, remains, buildings and other objects of historical or antiquarian interest of the City of Key West and surrounding areas. The selection for acquisition, restoration, preservation, maintenance, reconstruction, reproduction, and operation is to be made by the board of trustees based on criteria of historical evaluation as established by the Department of State. Section 266.201, F.S. The board of trustees consists of seven members appointed by the Governor and confirmed by the State Senate. Section 266.203, F.S. The State Treasurer is the ex officio treasurer of the board and has the custody of all its funds to be kept in a special account. All receipts and disbursements of the board are required to be handled subject to the same laws, rules and regulations as other state funds are handled. Section 266.205, F.S. Section 266.410, F.S., provides that the historic preservation board of trustees (and other boards) established under Ch. 266 shall exercise its powers, duties, and functions as prescribed by law, subject to budget review and approval by the Secretary of State, and places the board administratively directly under the supervision of the Secretary of State. See, AGO 81-67 describing the legal relationship between the Secretary of State and the Key West Board (and other historic preservation boards).
Your letter of inquiry and supplemental materials furnished this office suggest that s 266.201, F.S., and subsections (8), (13), (14) and (17) of s 266.206, F.S., supply the statutory authority "to contract services for a writer and printer . . . and to produce books which make the public aware of historic preservation in Monroe County." The Auditor General's Report on Audit of the board of trustees of March 3, 1983 states that "the purpose of the book was to help make the public aware of the heritage of Key West and also provide a source of operating funds." In your letter you state that the "Trustees feel that it is certainly a proper use of funds to publish as do other State Agencies which need to get information to the public."
However, I find no provision of Part IV, Ch. 266, F.S., governing the Historic Key West Preservation Board of Trustees, which expressly or impliedly authorizes or imposes any duty on the board of trustees to produce and publish books for public relations purposes, to fix and charge a price for the books produced or to expend public funds for such purposes. My examination of the specific provisions of s 266.201 and subsections (8), (13), (14) and (17) of s 266.206 fail to reveal any express or implied power for the board of trustees to perform such functions or purposes or to expend its funds for such purposes.
The fundamental intent and purpose of Part IV of Ch. 266, F.S., as set forth in s 266.201, is essentially to authorize the board
 to acquire, restore, preserve, maintain, reconstruct, reproduce, and operate for the use, benefit, education, recreation, enjoyment, and general welfare of the people of this state and nation certain ancient or historic landmarks, sites, cemeteries, graves, military works, monuments, locations, remains, buildings, and other objects of historical or antiquarian interest of the City of Key West and surrounding areas.
And see, s 266.202, F.S., defining "facilities" to mean "historic sites, objects, and landmarks for exhibition, owned, leased, managed, or operated by" the Key West Preservation Board of Trustees. (e.s.) The provisions of subsections (8), (13), (14) and (17) of s 266.206 must be read with and construed both in light of the purpose and function explicated in s 266.201 and the definition of "facilities" in s 266.202(2). Subsection (8) empowers the board of trustees to employ and dismiss consulting engineers, architects, superintendents or managers, accountants, inspectors and attorneys, and such other employees as may be deemed necessary. However, subsection (8) does not expressly, or by necessary implication, authorize the board of trustees to publish history books, or to charge and collect a purchase price for such books, nor does this subsection authorize the expenditure of the board's funds for such a purpose.
Subsection (13) empowers the board to "enter into all contracts or agreements with private individuals, corporations, organizations . . . with reference to facilities and to enter into contracts and agreements . . . which are necessary, expedient, or incidental to the performance of its duties or the execution of its powers under [Part IV of Ch. 266]." Yet, this contract power is bestowed by subsection (13) only with reference to "facilities" as defined by s 266.202 (and as discussed above), and with reference to the duties and powers of the board of trustees as set forth elsewhere in Part IV of Ch. 266. Thus, this contract power is linked to and limited by the board's other duties and powers, and does not expressly or impliedly authorize the production, publishing and sale of books for public relations purposes or the expenditure of public funds for such purposes.
See also, s 266.206(12), F.S., which authorizes the board of trustees to contract with, among others, any firm or corporation with respect to the establishment, construction, operation and financing of the facilities of the board in or near the City of Key West. The subsection, also, bestows a power to contract which is limited to actions connected with "facilities" of the board, as defined in s 266.202(2).
Subsection (14) provides that the board of trustees may "engage in any lawful business or activity deemed . . . necessary or useful in the . . . exercise of its powers to establish, finance, maintain and operate the facilities contemplated by [Part IV of Ch. 266] . . . ." This express power of the board is specifically linked to "facilities," as that term is defined in s 266.202(2), and thus nothing in subsection (14) expressly or impliedly authorizes the board to publish and sell books for public relations purposes or to spend public funds to publish and sell such books. See also, subsection (15) of s 266.206, F.S. (which only authorizes the fixing and collections of admission charges to "facilities" operated by the board, and which makes no mention of collection of a sales price for books published by the board).
Subsection (17) authorizes the board of trustees to perform all lawful acts necessary, convenient and incident to the effectuating of its functions and purposes. The force and effect of this general provision is circumscribed by the fundamental intent and purpose of s 266.201, as discussed above, and does not expressly or impliedly authorize the board to perform any function or purpose other than those enumerated in s 266.201, or necessarily connected with or incidental thereto.
Moreover, by application of the rule expressio unius est exclusio alterius (meaning that the inclusion in a statute of those things, upon which it is to act or operate, or which it authorizes, excludes all other things not mentioned, Dobbs v. Sea Isle Hotel,56 So.2d 341 [Fla. 1952], to the terms of Part IV of Ch. 266, it is apparent that nowhere does this statute expressly or impliedly confer authority on the board of trustees to produce, publish, or sell history books for public relations purposes.
In AGO 78-101, my predecessor in office considered the question of the authority of a county officer to expend public funds for informational materials. That opinion stated that a county officer in creating a charge or claim against county funds must be authorized by law to do so, either expressly or by clearly implied power given by statute. Cf., Florida Development Commission v. Dickinson, 229 So.2d 6 (1 D.C.A. Fla., 1969); AGO 75-120. AGO 78-101 relied on the rule that while an express power duly conferred may include implied authority to use means necessary to make the express power effective, such implied authority may not warrant the exercise of a substantive power not conferred. Additionally, it is well-established in Florida that administrative officers, such as your board of trustees, have no inherent powers, but rather are dependent upon statutory authority. See, e.g., Florida State University v. Jenkins,323 So.2d 597 (1 D.C.A. Fla., 1975); AGO's 78-101; 75-120; Florida Industrial Commission v. National Trucking Co., 107 So.2d 397 (1 D.C.A. Fla., 1958).
In summary it is my opinion that the Historic Key West Preservation Board of Trustees does not have statutory authority under Part IV, Ch. 266, F.S., to produce, publish, and sell books on local history.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General